**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| Mark Lenzi, | |
| Plaintiff, | |
| v. | Case No. 1:21-cv-01371-PTG-IDD |
| United States Department of State, and Antony J. Blinken, United States Secretary of State, | |
| Defendants. | |

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

Despite consenting to the Second Amended Complaint, Defendants now burden the Court with their Partial Motion to Dismiss. As this Court already held, Mr. Lenzi exhausted his discrimination and retaliation claims during the EEO process, which included Mr. Lenzi's allegations regarding the 2021 Frankfurt IMTS position as part of the corpus of allegations that Mr. Lenzi brought in *two* separate EEO complaints. Mr. Lenzi's Second Amended Complaint was filed solely to conform the pleadings to the facts of this case, as they have developed in response to productions that ***Defendants*** made in the middle of discovery, so that Mr. Lenzi may provide complete context for his disability discrimination and retaliation claims at trial. As Defendants would have it, they would like to use the facts and circumstances of the 2021 Frankfurt IMTS position ***against*** Mr. Lenzi while seeking to prevent Mr. Lenzi from raising the 2021 Frankfurt IMTS position in his affirmative case. That goes against the interests of justice and makes little sense in a context where Mr. Lenzi provided detailed allegations regarding the 2021 IMTS position

across two of his EEO complaints. Thus, Defendants' Partial Motion to Dismiss the Second Amended Complaint ("Motion") should be denied.[1]

## I.      BACKGROUND

### A.      Defendants' Knowledge of the 2021 Frankfurt IMTS Position and Mr. Lenzi's Exhaustion of Administrative Remedies

Mr. Lenzi filed three formal complaints of discrimination with the Equal Employment Opportunity Commission ("EEO" or "EEOC") in 2020, all of which included claims that the State Department engaged in disability discrimination and retaliation by denying Mr. Lenzi overseas positions for which he was qualified while maintaining him on a domestic "overcomplement" status: EEO Case No. DOS-0158-20 (June 1, 2020); EEO Case No. DOS-0232-20 (July 3, 2020); and EEO Case No. DOS-0213-20 (August 14, 2020). Second Am. Compl. ¶ 96.

On February 5, 2021 and April 27, 2021, Mr. Lenzi filed a fourth EEO complaint (EEO Case No. DOS-0076-21) and amendments thereto that alleged additional instances of disability discrimination and retaliation against the State Department for their refusal to assign Mr. Lenzi to overseas positions for which he was qualified. *Id.* ¶¶ 101–103. On August 4, 2021, the OCR informed Mr. Lenzi that the investigation of his complaint had not been completed within 180 days and notified him of his right to file a civil action with this Court. *Id.* ¶ 102.

---

[1] Defendants' actions are especially objectionable given that Defendants had the opportunity to withhold consent, oppose the amendment, and save Mr. Lenzi the time and effort of engaging in what he believed to be good faith negotiations regarding the amendment in addition to responding to a motion to dismiss. As the Court is aware, "futility" of amendment is a basis for opposing amendment. *Labor v. Harvey*, 438 F.3d 404, 426–27 (4th Cir. 2006) ("[L]eave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile."). Defendants' did not argue that Mr. Lenzi's amendment was futile, which would have been the case if Defendants' motion were proper. Should the Court deem it appropriate, Mr. Lenzi reserves the right to file a motion for sanctions against Defendants pursuant to Federal Rule of Civil Procedure 11 to recover its costs in responding to this unnecessary motion.

On July 22, 2021, Mr. Lenzi filed a fifth formal EEO complaint with OCR, alleging additional instances of disability discrimination and retaliation against Mr. Lenzi by the State Department's refusal to assign Mr. Lenzi to overseas positions for which he was qualified. *Id.* ¶ 104; July 22, 2021 EEO Compl. (**Exhibit A**). In this complaint, Mr. Lenzi states that he was awarded an IMTS position in Frankfurt, Germany with the understanding that he would not have to take the entry-level IMTS training that is usually required for the position due to his extensive knowledge and experience in the area. *Id.*[2] The complaint further alleges that despite this initial agreement and understanding that Mr. Lenzi would not be required to take the training, the State Department interceded and required him to take the training anyway, knowing that it would be virtually impossible for Mr. Lenzi to complete the training given his disability. Second Am. Compl. ¶ 104; Ex. A at 4–8. Mr. Lenzi believes that this is yet another example of the State Department's pattern and pretext for finding any excuse for its ongoing refusals to reassign Mr. Lenzi to overseas posts. On July 23, 2021, Claudette R.L. Rhone of the State Department acknowledged receipt of the July 22, 2021 EEO Complaint that recited the detailed allegations regarding the 2021 IMTS position and indicated her intent to consolidate the July 22, 2021 Complaint into EEO Case No. DOS-0076-21. July 23, 2021 Email from C. Rhone (**Exhibit B**).

---

[2] In his July 22, 2021 EEO complaint, Mr. Lenzi described in great detail the discrimination and retaliation he was experiencing in relation to the 2021 Frankfurt IMTS position. *See e.g.* Ex. A at 4 (stating that he "agreed with Frankfurt that I would start July 31 because [he] would not need the entry level IMTS training due to [his] specialized knowledge"); *id.* at 7 ("I refused to acknowledge the supposed training requirement because that was not what Frankfurt agreed with me, because I was told by IRM personnel that IMTS's were being sent to posts without the entry-level training, because IMTS's were designated as "Critical Worldwide Shortage," and because it appeared to be discriminatory and retaliatory that I was being made to do the entry-level training when other IMTS's, especially over the past year, were being sent to posts without the entry level training. Despite my refusal to commit to taking the training, CDO Kaleczyc still registered the handshake.").

On July 28, 2021, Mr. Lenzi filed a sixth formal EEO complaint with OCR. Second Am. Compl. ¶ 105; July 28, 2021 EEO Compl. (**Exhibit C**). This complaint realleged, for a second time, Mr. Lenzi's disability discrimination and retaliation allegations regarding the State Department's decision to prevent Mr. Lenzi from completing his IMTS assignment in Frankfurt, Germany.[3] Notably, Defendants do not mention either of these EEO Complaints or their discussion of the 2021 Frankfurt IMTS position in their motion. They also ignore that references to these allegations, across multiple EEO complaints, are included in the Second Amended Complaint. Second Am. Compl. ¶¶ 86–91, 104–06.

In June 2021, the State Department and Ms. Jillian Barron, Mr. Lenzi's attorney at the time, began negotiations to settle Mr. Lenzi's EEO complaints, all of which were either still pending with the EEOC or S/OCR or were eligible for suit in federal court. Declaration of Jillian Barron (**Exhibit D**) ¶ 5. During settlement negotiations, Mr. Lenzi made the following statements in support of his position for settlement:

> For the past two years, Mark Lenzi has been subjected to an ongoing pattern of discriminatory and retaliatory conduct that has included rejection of his bids for four positions for which he was the best qualified and in some cases the only bidder. After he was rejected for those positions, he was threatened with a forced unsuitable assignment if he did not obtain a position within an unreasonably short period of time—an assignment that would not have accommodated his Disability and Reasonable Accommodation (DRAD). **Without his CDO's assistance, Mr. Lenzi was able through his own efforts to locate an Information Management Technical Specialist (IMTS) position in Frankfurt that was**

---

[3] Like in his July 22, 2021 EEO complaint, Mr. Lenzi described the discrimination and retaliation he was experiencing in great detail in his July 28, 2021 EEO complaint. *See e.g.* Ex. C at 4 ("I was able to bid on and receive a handshake for an IMTS position in Frankfurt, but DS then created an obstacle to my taking the position by insisting I first take certain training that has not been required of others. When I was unable to take the training due to my disability and DRAD, DS 'broke' my handshake and again directed me to a dead-end assignment. The facts related to these situations are detailed in numerous prior EEO filings that are ongoing and can be provided again in support of this claim if requested.").

4

> **scheduled to begin in mid-August. The position is not ideal for his career path, but it will remove him for a time from the discriminatory environment in which he has been trying to function. Once again, though, management obstructed his progress, now demanding that before he begin the Frankfurt position he complete training that is inconsistent with his DRAD, that would delay his arrival in Frankfurt, and that was not required by the Frankfurt managers in the new job. To address this conduct, Mr. Lenzi has had to file a series of EEO complaints. Those complaints have resulted in further retaliation.**

June 15, 2021 Email from J. Barron to State Department (**Exhibit E**); Ex. D ¶ 6 (emphasis added).

Mr. Lenzi also cited his complaints regarding the 2021 Frankfurt IMTS position several times throughout settlement discussions with the State Department. *Id.* Thus, on information and belief, the State Department was well aware of Mr. Lenzi's 2021 Frankfurt IMTS allegations when it received the EEO Complaints dated July 22, 2022 and July 28, 2022, and was also aware that Mr. Lenzi viewed the circumstances pertaining to the 2021 IMTS Frankfurt position to be part of the State Department's ongoing disability discrimination and retaliation

Around the same time, Mr. Lenzi informed the State Department that he would pursue the disability discrimination and retaliation claims raised in his initial set of EEO complaints in federal court—these complaints addressed denied SEO positions overseas in Frankfurt, Belgrade, Athens, and Warsaw. EEO Notice (**Exhibit F**). On September 3, 2021, Mr. Lenzi filed a Notice of Withdrawal of Claims with the EEOC, which stated the following:

> Complainant Mark Lenzi hereby provides formal notice of his withdrawal from the EEOC of his request for a hearing on the above-numbered claims and asks that no further action be taken on the claims by the EEOC other than to process the withdrawal. Complainant will be filing a civil action asserting the underlying discrimination and retaliation claims in a United States District Court with jurisdiction over the claims and will provide appropriate notice and service of the filing to the Respondent Agency.

> Complainant informally notified the Respondent Agency on August 30, 2021 of his intention to withdraw his claims and file in court, so Respondent was already aware the withdrawal would be occurring.

*Id.* On September 9, 2021, the EEOC entered an Order of Dismissal noting Mr. Lenzi's intention to file a civil action. EEO Or. Dismiss. (**Exhibit G**). On September 10, 2021, Mr. Lenzi's allegations in EEO Case No. DOS-0076-21—which remained pending—were amended by the State Department's Office of Civil Rights to include that "[o]n July 27, 2021, you were notified that you were not selected for the POL/ECON Officer position at the Consulate in Krakow, Poland." Second Am. Compl. ¶ 105. Neither Mr. Lenzi nor his attorney at the time, Ms. Jillian Barron, evinced any intention to withdraw or abandon other relevant facts and circumstances underlying Mr. Lenzi's discrimination and retaliation claims, including facts about the 2021 Frankfurt IMTS position that was the subject of the July 22, 2021 and July 28, 2021 complaints. Ex. D ¶¶ 7–8 ("I did not take any affirmative steps to abandon Mr. Lenzi's allegations relating to the 2021 Frankfurt IMTS position, and I never expressed any intention to the State Department to abandon those claims . . . . Had the State Department ever suggested that Mr. Lenzi was abandoning his allegations pertaining to the 2021 Frankfurt IMTS position while I represented him, I would have taken affirmative steps to correct the State Department.").

Mr. Lenzi filed the instant action in the Eastern District of Virginia on December 8, 2021, which asserted the same pattern of discrimination and retaliation claims Mr. Lenzi raised during the EEO process. *See* Compl., ECF No. 1. Mr. Lenzi's original complaint included disability discrimination claims pertaining to, *inter alia*, the State Department's indefinite placement of Mr. Lenzi on overcomplement status and the State Department's denials of Mr. Lenzi's overseas assignments to Security Engineering Officer positions in Frankfurt in 2019, as well as other positions in Athens, Warsaw, and Belgrade, which were the subject of Mr. Lenzi's initial round of

complaints. *See id.* ¶¶ 11, 14, 27, 61. This Court denied the Government's first motion to dismiss as to Mr. Lenzi's disability discrimination and retaliation claims based on these underlying facts. *See* Or. Mot. Dismiss (Apr. 14, 2022), ECF No. 23. Mr. Lenzi's First Amended Complaint, which was filed on May 6, 2022, maintained the same claims, implicating the same underlying facts and circumstances relevant to the State Department's pattern of discrimination and retaliation against Mr. Lenzi. *See* First Am. Compl., ECF No. 27. Because Mr. Lenzi's allegations relating to a Krakow POL/ECON position had ripened, however, Mr. Lenzi added allegations to his discrimination and retaliation claims relating to that position in his First Amended Complaint. First Am. Compl. ¶¶ 82–84, 116, 126–27. In their partial motion to dismiss the First Amended Complaint, Defendants did not seek to dismiss the facts pertaining to the Krakow position from the case. Pl.'s Opp. Defs.' Partial Mot. Dismiss First Am. Compl., ECF No. 31 at 6–8. Thus, as with the 2019 Frankfurt, Athens, Belgrade, and Warsaw positions, the parties do not dispute that the State Department's denial of a Krakow POL/ECON position underlies Mr. Lenzi's discrimination and retaliation claims.

During fact discovery in this case, the Government produced custodial documents of one of its intended trial witnesses, Mr. Andrew Kaleczyc, on October 18, 2022. This production included several documents pertaining to the facts and circumstances relating to the 2021 Frankfurt IMTS position, the circumstances pertaining to Mr. Lenzi receiving a handshake for the position, and discussions around Mr. Lenzi being required to attend a training as a prerequisite for the onward assignment.[4] The events pertaining to Mr. Lenzi's efforts to procure the 2021 Frankfurt IMTS assignment occurred between April and June 2021 for a position that was due to commence

---

[4] *See e.g.* (**Exhibit H**) (documents in Defendant's production addressing 2021 Frankfurt IMTS position).

in Fall 2021. After reviewing these documents, Counsel for Mr. Lenzi ("Plaintiff's Counsel")

deposed Mr. Kaleczyc on October 24, 2022. During the deposition, Mr. Kaleczyc referenced the

2021 Frankfurt IMTS position as an example of an overseas position that the State Department

allegedly offered Mr. Lenzi in response to Mr. Lenzi's efforts to secure an overseas position after

2018:

> Q.      Right. Because, to be clear, the agency didn't want Mr. Lenzi
> to apply to any overseas positions or get in any overseas positions
> other than the Monterrey one, right?
>
> . . .
>
> A.      I don't have any basis to agree with that statement. In fact,
> Mr. Lenzi bid on another position, and he was actually paneled to it;
> so, no, I disagree with your statement.
>
> Q.      So you're -- now you're talking about the Frankfurt 2020 IT
> position,[5] right?
>
> A.      Correct.

Deposition of Andrew Kaleczyc ("Kaleczyc Dep.") 217:11–218:4. This testimony suggested that

Mr. Kaleczyc intends to testify at trial that the Frankfurt IMTS position provided a reason why the

State Department allegedly did ***not*** act in a discriminatory manner. But, consistent with Mr.

Lenzi's allegations in two EEO complaints, *see supra* at 3–4, the State Department's ultimate

refusal to allow Mr. Lenzi to go to Frankfurt in 2021 reflected the Agency's ongoing pattern of

discrimination and retaliation against him. As Mr. Lenzi alleged, Mr. Lenzi had been given an

assignment date and been told that he ***would not*** be required to take the training. *See* Ex. A at 4;

Ex. C at 4. Moreover, numerous people with skills similar to Mr. Lenzi were not required to attend

the training, and Mr. Lenzi was only forced to take the training because the State Department knew

---

[5] This was a reference to the 2021 Frankfurt IMTS position, as further testimony in the deposition
confirmed. Kaleczyc Dep. (**Exhibit J**) 218:2–220:12.

it would pose challenges given Mr. Lenzi's disability. Ex. A at 5–12; Ex. C at 4.  That set up the State Department's refusal to allow Mr. Lenzi to move onward to service in the 2021 Frankfurt IMTS position.

### B.    Defendants Consent to the Second Amended Complaint

Almost immediately after receiving this document and deposition discovery, on October 28, 2022, Counsel for Mr. Lenzi ("Plaintiff's Counsel") notified Defendants that Mr. Lenzi intended to file a second amended complaint in this action "for the sole purpose of adding allegations to the Complaint pertaining to an IMTS position in Frankfurt for which Mr. Lenzi received a handshake in 2021, but for which the State Department broke the assignment as a result of a training requirement it imposed on Mr. Lenzi." Oct. 28, 2022–Nov. 10, 2022 Emails Between Pl.'s Couns. and Defs. (**Exhibit I**) at 6–7. Plaintiff's Counsel explained further that the "allegations pertaining to this issue were exhausted in EEO complaints that Mr. Lenzi filed with the State Department on July 22, 2021 and July 28, 2021" and that the amendment would help "avoid unnecessary motions practice and burdening the Court." *Id.* Mr. Lenzi ultimately requested the following:

> In sum, we request the Government's written consent to file the Second Amended Complaint . . . with the understanding that there will not be any motion to dismiss practice and that this is for the sole purpose of conforming the pleadings to the case as it has developed (i.e., adding Mr. Lenzi's allegations regarding the 2021 Frankfurt IMTS position, which he believes are part and parcel of Mr. Lenzi's ongoing disparate treatment and retaliation by the State Department on account of his disability).

*Id.* at 7. Mr. Lenzi requested written consent to file the amendment pursuant to Federal Rule of Civil Procedure 15(a)(2). During the email exchanges that followed, Mr. Lenzi outlined the standard for amendment, and explained:

> [L]eave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Laber v. Harvey*, 438 F.3d 404, 426-427 (4th Cir. 2006). None of these bases for denial apply here. First, there is no prejudice or unfair surprise because the facts at issue are facts that you have been aware of for some time from your own document productions, and we are well before the close of fact discovery and trial. While I understand that delay can be a consideration on a motion to amend, "[d]elay alone . . . is an insufficient reason to deny the plaintiff's motion to amend." Id. Second, I can represent to you that we are bringing the amendment in good faith, not out of a vexatious purpose, based on the facts we recently learned of in document product[ions] and depositions. We are bringing forth the amendment as soon as possible after we became aware of the relevant facts. Finally, the amendment is not futile. It is similar to the amendment to include the Krakow position that we included in the First Amended Complaint, to which the Government did not tender an opposition in its Partial Motion To Dismiss. For these reasons, we believe that our request for written consent is appropriate and that motions practice on this issue would not be a good use of Court resources.

*Id.* at 6–7. Eventually, Defendants consented to Mr. Lenzi's Second Amended Complaint after extracting numerous discovery concessions from Mr. Lenzi, including an agreement that Mr. Lenzi would not serve any new interrogatories or requests for production pertaining to the 2021 Frankfurt IMTS position. *Id.* at 3–4. Defendants never asserted that Mr. Lenzi's amendment would be futile.[6] In accordance with Defendants' consent, Mr. Lenzi filed the Second Amended Complaint on November 11, 2022. Second Am. Compl. (ECF No. 50). Despite their consent, Defendants filed the instant Motion on November 25, 2022. Defs.' Partial Mot. Dismiss Second Am. Compl. ("Partial Mot. Dismiss"), ECF Nos. 62–63.

---

[6] At most, they asserted that they might move to dismiss based on an alleged "exhaustion" argument, even though the Court has already ruled that the disability discrimination and retaliation claims have been exhausted. Ex. I at 4; *see also* Apr. 19, 2022 Hr'g Tr., ECF No. 24 56:17–57:23.

After Defendants filed this Motion, Plaintiffs' Counsel requested a meet and confer with Defendants out of concern that this motion was brought for a vexatious purpose, and noted that the motion appeared to be legally frivolous and not grounded in any binding precedent. During the meet and confer, Defendants confirmed that they had discussed the 2021 Frankfurt position with Mr. Lenzi's predecessor counsel, Jillian Barron, during settlement negotiations relating to the EEO proceedings. Moreover, when asked whether they would consent to not referencing the 2021 Frankfurt IMTS position at trial if Defendants succeed on the instant Motion, Defendants refused to consent and did not waive the right to use the facts of the 2021 Frankfurt IMTS position ***against*** Mr. Lenzi. Despite these facts, Defendants have not withdrawn their motion.

## II.    ARGUMENT

### A.    Mr. Lenzi already acknowledged that his Failure to Accommodate, Failure to Promote, and First Amendment Claims were dismissed by this Court and only included in the Second Amended Complaint to preserve those claims for appeal.

As stated explicitly in Mr. Lenzi's Second Amended Complaint, Mr. Lenzi listed his failure to accommodate, failure to promote, and First Amendment claims in the Second Amended Complaint "solely to ensure that his objections to the legal ruling are preserved for any future appeal." Second. Am. Compl. at 43–52, n. 10–12. Because Mr. Lenzi acknowledged that he did not maintain these claims in this Second Amended Complaint, there are no failure to accommodate, failure to promote, or First Amendment claims to dismiss. This is clearly stated on the face of Mr. Lenzi's Second Amended Complaint and has been conveyed repeatedly to Defendants. Defendants are aware that Mr. Lenzi does not intend to pursue those claims.

Nevertheless, Defendants cite *Young v. City of Mount Ranier* to suggest that Mr. Lenzi's decision to preserve the dismissed allegations for appeal by listing them in his Second Amended Complaint was improper or otherwise forced Defendants to move for partial dismissal. Partial Mot.

Dismiss at 3. As Defendants admit, however, *Young* only held that it was "***not necessary***" to include dismissed allegations in an amended complaint to preserve those allegations for appeal. *Id.* (emphasis added). *Young* does ***not*** suggest that it is improper or otherwise prohibited for a plaintiff to list dismissed allegations in a complaint for the sole purpose of preserving them for appeal; nor does it suggest that the previously dismissed allegations need to be dismissed again if the Plaintiff acknowledges that the previously dismissed allegations are no longer in the case. *See Young v. City of Mount Ranier*, 238 F.3d 567, 572–73 (4th Cir. 2001). In fact, this Court acknowledged—without issue—Mr. Lenzi's decision to include the dismissed claims solely for appeal in his First Amended Complaint: "In terms of the failure to promote and the failure to accommodate claims, I think it's acknowledged in the pleadings that there's no need for the Court to address those again. My ruling stands in terms of the dismissal of those claims, and I understand you repled them just for purposes of preserving your argument for appeal." Oct. 23, 2022 Hr'g Tr. 21:23–22:3. For these reasons, Mr. Lenzi believes that the State Department's argument on these claims is improper and not a good use of the Court's time. Ultimately, there are no failure to accommodate, failure to promote, or First Amendment claims to dismiss, and Defendants' Motion in this respect should be denied as moot.

**B.    The Court has already held that Mr. Lenzi exhausted his Rehabilitation Act disparate treatment and retaliation claims, which include the facts and circumstances of the 2021 Frankfurt IMTS position.**

***i.     The Court Already Held that Mr. Lenzi's Disability Discrimination and Retaliation Claims are Exhausted, and those Claims Include the Allegations in the EEO Complaints Pertaining To The 2021 Frankfurt IMTS Position .***

As the Court already held, Mr. Lenzi exhausted his discrimination and retaliation claims during the EEO process. Apr. 19, 2022 Hr'g Tr., ECF No. 24 56:17–57:23 ("[T]here are sufficient facts and inferences here in the light most favorable to the plaintiff that there was retaliation in this

case . . . . "[T]he facts here are sufficient for the claim to go forward on disparate treatment."). The Court explicitly distinguished Mr. Lenzi's discrimination and retaliation claims from his failure to promote, failure to accommodate, and First Amendment retaliation claims, all of which the Court found were not exhausted or otherwise subject to dismissal. *Id.* at 55:24–56:2, 57:17; Oct. 23, 2022 Hr'g Tr. 23:7–13. Moreover, Defendants do not contest that Mr. Lenzi's disability discrimination and retaliation claims were exhausted.

For purposes of this motion, the State Department does not dispute that Mr. Lenzi's allegations regarding the 2021 Frankfurt IMTS position are part of Mr. Lenzi's claims of disability discrimination and retaliation that the Court already held are exhausted and properly part of the case. Indeed, Mr. Lenzi's EEO complaints from July 22, 2021 and July 28, 2021 repeatedly reference retaliation and discrimination in the context of his discussions of the 2021 Frankfurt IMTS position. *See e.g.* Ex. A at 7 ("[I]t appeared to be discriminatory and retaliatory that I was being made to do the entry-level training when other IMTS's, especially over the past year, were being sent to posts without the entry level training."); Ex. C at 4 ("I was able to bid on and receive a handshake for an IMTS position in Frankfurt, but DS then created an obstacle to my taking the position by insisting I first take certain training that has not been required of others. When I was unable to take the training due to my disability and DRAD, DS "broke" my handshake and again directed me to a dead-end assignment.").

Thus, Mr. Lenzi's Second Amended Complaint was filed solely to conform the pleadings, which recite the properly exhausted disability discrimination and retaliation claims, to the facts of this case as they have developed in response to productions that ***Defendants*** made in the middle of discovery. This squaring of the facts is necessary so that Mr. Lenzi may provide complete context for his disability discrimination and retaliation claims at trial. The Court even held that the

complaints filed in July 2021 are part of the case, explaining that the relevant allegations included those "that he was denied his overseas request[s] in 2020 and 2021 . . . the time period between those EEO complaints, the June, ***July***, and August complaints, and . . . the later decisions in October and November." Apr. 19, 2022 Hr'g Tr. 56:22–25. The Court went on to conclude that Mr. Lenzi's disparate treatment claim is exhausted as to allegations "that he was treated different than employees who were not disabled [and] the fact that he was refused for overseas assignments." *Id.* at 57:12–14. For these reasons alone, the State Department's exhaustion argument lacks merit and the Frankfurt 2021 IMTS position is properly part of the case.

Apart from the Court's previous statements, the facts and circumstances underlying the 2021 Frankfurt IMTS position—which Mr. Lenzi raised repeatedly in his EEO complaints and during EEO settlement negotiations with Defendants—fall squarely within the claims this Court already permitted to proceed. A high-level review of Mr. Lenzi's discrimination and retaliation allegations regarding the State Department's assignment decisions reflect that the State Department denied Mr. Lenzi the following overseas assignments (listed in chronological order) with illegal discriminatory and retaliatory animus: (1) two SEO positions in Frankfurt, Germany (2019); (2) one SEO position in Belgrade, Serbia; (3) one SEO position in Athens, Greece; (4) one SEO position in Warsaw, Poland; (5) one IMTS position in Frankfurt, Germany; and (6) one political economic officer position in Krakow, Poland. All of these denied assignments occurred between 2019 through 2021. Mr. Lenzi applied for the Frankfurt SEO position in September 2019 and was formally denied it in March 2020 when it was assigned as an entry level; he applied for the Belgrade position in October 2020 and was denied shortly thereafter after his medical clearance was downgraded; he applied for the Athens position (as the only bidder) in October 2020 and was denied in January 2021 when the position was reassigned to entry level; he applied for the Warsaw

position in October 2020 and was denied shortly thereafter; he sought and received a handshake for the Frankfurt IMTS position in May 2020 but was not allowed to take the onward assignment after the State Department insisted Mr. Lenzi take a training that started in June 2020; and Mr. Lenzi applied for the Krakow position in July 2021 and the position was given to another candidate shortly thereafter. Therefore, the facts pertaining the 2021 Frankfurt IMTS position fell squarely in the middle of the timeframe where Mr. Lenzi believes discrimination and retaliation were occurring.

Consistent with the details Mr. Lenzi provided regarding the other positions in his EEO complaints and the instant litigation, Mr. Lenzi asserted in his July 22, 2021 and July 28, 2021 EEO complaints that Defendants acted in a discriminatory and retaliatory fashion by preventing Mr. Lenzi from assuming the 2021 Frankfurt IMTS position. Ex. A at 11 ("[Defendant's] assertion that I was required to complete the entry-level training before starting the Frankfurt position, and their subsequent withdrawal of that position is pretext. I was treated differently by GTM because of discriminatory and retaliatory reasons."); Ex. C at 4 ("I was able to bid on and receive a handshake for an IMTS position in Frankfurt, but DS [Diplomatic Security] then created an obstacle to my taking the position by insisting I first take certain training that has not been required of others.").

Therefore, as discussed above, Mr. Lenzi's allegations regarding the 2021 Frankfurt IMTS position are part of a series of allegations he brought in two separate EEO complaints against the State Department pertaining to his properly exhausted disability discrimination and retaliation claims. Mr. Lenzi's Second Amended Complaint was filed solely to conform the pleadings to the facts of the case as they have developed. Accordingly, Defendants' Motion should be denied.

ii.   *Mr. Lenzi Did Not Abandon or Withdraw His Allegations Pertaining to the 2021 Frankfurt IMTS Position as Part of His Properly Exhausted Disability Discrimination and Retaliation Claims.*

As discussed above and as Defendants do not dispute, the two EEO complaints Mr. Lenzi filed with the EEO in July 2021 squarely raised the Frankfurt 2021 IMTS allegations. The State Department in fact concedes that "Plaintiff *initiated* the EEO process with respect to the 2021 Frankfurt IMTS assignment decision," but asserts that Mr. Lenzi "never followed the [EEO] process through to completion" and that Mr. Lenzi somehow "abandoned" his allegations because he did not correct a letter that recited certain "accepted" allegations so that it referenced the 2021 Frankfurt IMTS position. Partial Mot. Dismiss at 4–5. Most critically here, however, Mr. Lenzi *did* follow the EEO process to completion—he filed EEO complaints that included the Frankfurt IMTS 2021 position, engaged in settlement negotiations with the EEO that referenced the same position, and then brought his disability discrimination and retaliation claims to Federal Court that included underlying facts relating to several denied assignments—including the SEO positions in Frankfurt, Warsaw, Belgrade, and Athens; the Krakow POL/ECON position, and the 2021 Frankfurt IMTS position. The notion that Mr. Lenzi's reference the 2021 Frankfurt IMTS position was somehow "abandoned" and should be excised from the properly exhausted discrimination and retaliation claims borders on the absurd.

Indeed, the cases the State Department cites do not support its "abandonment" theory. *First*, the only Fourth Circuit case that the State Department relies on is *Áustin v. Winter*, 286 F.App'x 31, 35 (4th Cir. 2008), a nonprecedential decision that bears no relevance to this case. In *Austin*, the Plaintiff refused to participate in an EEO fact-finding process, and thus "never followed the process through to completion." Here, Mr. Lenzi did participate in the EEO process, and even attempted to settle the matter, but simply chose to proceed in Federal Court. There is no argument

16

made by the State Department that Mr. Lenzi failed to cooperate with the EEO process, as was the case in *Austin*.

*Second*, having no precedential authority from the Fourth Circuit, the State Department next cites Eastern District of Virginia Court cases that related to alleged "abandonment" of claims during the administrative process. All of these cases are irrelevant as well. *Green v. Sessions* concerned a case where the plaintiff affirmatively abandoned a whistleblower retaliation claim before the MSPB, and there was no "final decision" from the MSPB before the plaintiff brought suit in district court. 2018 WL 2025299, at *7-8 (E.D. Va. May 1, 2018). This case has nothing to do with the MSPB, and there is again no dispute that Mr. Lenzi *did exhaust* his *disability retaliation* claim at issue here. *Tharp v. Lynch* involved a situation where the plaintiff failed to appeal EEO decisions to the "Office of Federal Operations" and therefore abandoned certain claims. 2015 WL 8482747, at *6 (E.D. Va. Dec. 8, 2015). Here, Mr. Lenzi waited the 180-day period and there was nothing to appeal because, consistent with Mr. Lenzi's decision to bring his claims here, the EEO rendered no decision on the Krakow and 2021 Frankfurt IMTS issues. In *Rodriguez v. McHugh*, the plaintiff withdrew the EEO complaint. 2016 WL 10677888, at *3 (E.D. Va. Feb. 17, 2016). Mr. Lenzi did not withdraw the July 22, 2021 nor the July 28, 2021 EEO complaints attached to this response that discussed the Frankfurt 2021 IMTS position. And in *Nguyen v. Potter*, the plaintiff abandoned a retaliation claim because they "specifically opted not to pursue a retaliation claim" and "responded 'not applicable' to all questions regarding retaliation." 2014 WL 2861312, at *5 (E.D. Va. June 24, 2014). Here, in stark contrast, the Court again has ruled that Mr. Lenzi exhausted his retaliation claims, and Mr. Lenzi has never "specifically opted" not to pursue anything—there is no indication that Mr. Lenzi affirmatively

17

waived or checked a box suggesting he that he did not intend to raise the 2021 Frankfurt IMTS allegations in connection with his discrimination and retaliation claims.

Because its Fourth Circuit and Eastern District of Virginia cases are exceptionally weak, the State Department leans on out-of-circuit cases in a footnote. These cases also reinforce that the "abandonment" theory lacks merit and does not apply here. The *McKeithan v. Boarman* case involved a situation where the plaintiff "arguably" abandoned gender discrimination, religious discrimination, and retaliation claims because the acceptance letter only recited ***age discrimination***. 803 F. Supp. 2d 63, 68-69 (D.D.C. 2011). But the Court was "hesitant to adopt such a rigid position" and ***did not dismiss the claim on that basis***. *Id.* at 68. Unlike here, moreover, there is no dispute that the ***disability discrimination or retaliation claims*** are exhausted because the Court has already permitted those claims to proceed. Other cases the State Department relies on also involved situations where standalone claims—such as failure to promote, constructive discharge, sexual harassment, national agreement violations, and breach of settlement agreements were never raised in the EEO complaint and thus abandoned. *See Andrews-Willmann v. Paulson*, 287 F. App'x 741, 745–46 (11th Cir. 2008) (failure to present a failure to promote claim); *Clayton v. Rumsfeld*, 2003 WL 25737889, at *3 (W.D. Tx. Aug. 8, 2003) (failure to present constructive discharge claim); *Palmer v. Potter*, 2010 WL 11500520, at *18 (N.D. Ga. Jan. 12, 2010) ("EEO Complaint . . . ma[de] no reference of sexual conduct," "EEO complaint . . . fails to mention the Union or the national agreement," and "the complaint does not mention the settlement agreement or suggest that certain actions were a violation of the agreement"). Here, again, the 2021 Frankfurt IMTS position was squarely raised in two EEO complaints. None of these cases therefore have any bearing on this case.

18

The State Department also suggests that the 2021 Frankfurt IMTS allegations should be dismissed on account of timeliness, even though Mr. Lenzi sought amendment six weeks before the close of discovery, Mr. Lenzi agreed not to tender new discovery, and Defendants consented to the amendment. Defendants' cases, again, are inapposite. *Slate v. Potter* involved a situation where Plaintiff sought relief for "a number of specific instances of discrimination and retaliation ***not previously addressed in his EEO complaints***," and had never filed a "timely civil action" on the claims after several years of litigation. 459 F. Supp. 2d 423, 430 (M.D.N.C. 2006). Similarly, *Lorenzo v. Rumsfeld*, 456 F. Supp. 2d 731, 736-37 (E.D. Va. 2006), simply involved a situation where the plaintiff failed to file the case in Federal Court within 90 days of an EEOC decision—a situation that does not apply here because the EEOC never made any decisions on Mr. Lenzi's claims because everyone knew they were being brought here instead, 180-days after Mr. Lenzi's EEO complaints were filed. There is no dispute that Mr. Lenzi's action was filed in a timely manner—there is no rule or regulation that bars Mr. Lenzi's allegations pertaining to the Frankfurt 2021 IMTS position, and the State Department cites none. Mr. Lenzi was reasonably permitted to amend his complaint consistent with the governing legal standards based on the facts as they developed during discovery.[7]

Ultimately, none of Defendants' cases stand for the proposition that allegations in duly exhausted discrimination and retaliation claims, that were ***pleaded in multiple EEO complaints***, are somehow abandoned simply because they were not included on an "accepted allegations" form,

---

[7] The State Department complains that the parties represented in August that "[t]he parties do not anticipate the filing of amended pleadings." ECF No. 35 ¶ 4. But Mr. Lenzi also did not anticipate that the State Department would inject the 2021 Frankfurt IMTS issue into the case during discovery, and the State Department (again) consented to the amendment because the representation was not binding and the amendment was consistent with the permissive standards for amending claims.

nor do their cases support such a rigid rule. Moreover, none of the cases, excise ***factual portions*** of properly exhausted, raised, and pleaded retaliation or discrimination claims based on an alleged "abandonment" theory either, let alone in a situation where neither the Plaintiff nor the Plaintiff's counsel, who had raised the allegations before, had ever expressed an affirmative intention to do so. The State Department hopes that the Court will lay a tripwire that would be unsupported by ***any*** precedent and would be squarely against the interests of justice. This Court should decline the State Department's invitation.

> **C.    Even If This Court Believes The State Department's Abandonment Argument Is Permissible, The 2021 Frankfurt IMTS Position Allegations Are Still Properly Part of His Discrimination and Retaliation Claims And Should Not Be Dismissed.**

Even if an "abandonment" theory is legally cognizable, Mr. Lenzi's allegations with respect to the 2021 Frankfurt IMTS position should not be dismissed from his disability discrimination and retaliation claims. The law is clear: a plaintiff need not raise every specific instance of discrimination or retaliation during the administrative process before pursing those same claims of ongoing discrimination and retaliation in federal court. "[F]ederal courts may still hear claims that the employee did not raise before the agency, as long as they are 'like or related' and grow out of the allegations during the pendency of the case before the agency." *Stewart v. Iancu*, 912 F.3d 693, 705 (4th Cir. 2019) (quoting *Sydnor v. Fairfax Cnty., Va.*, 681 F.3d 591, 594 (4th Cir. 2012)); *see also Smith v. First Union Nat. Bank*, 202 F.3d 234, 247 (4th Cir. 2000) ("If a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation, the plaintiff may advance such claims in her subsequent civil suit."). This standard maintains the balance between "providing notice to employers and the [agency] on the one hand and ensuring plaintiffs are not tripped up

over technicalities on the other." *Sydnor*, 681 F.3d at 594 ("[T]he exhaustion requirement should not become a tripwire for hapless plaintiffs.").

Here, the allegations would have been expected to follow from the investigations, just as the facts developed in this case when Defendants produced the documents pertaining to the 2021 Frankfurt IMTS position and the issue came up during deposition. As discussed above, this case involves a series of incidents involving denied assignments that constitute portions of the discrimination and retaliation that the State Department has been conducting. *Supra* at 13–14. In Mr. Lenzi's EEO complaints, he raised issues with the SEO positions in Frankfurt, Belgrade, Warsaw, Athens, and the Krakow POL/ECON position. All of these incidents occurred during the 2019–2021 timeframe, during the State Department's placement of Mr. Lenzi in overcomplement status—the State Department's maintenance of Mr. Lenzi in domestic positions. The Frankfurt IMTS 2021 handshake and refusal by the State Department to approve Mr. Lenzi because of the training occurred in the April-June 2021 timeframe, which was squarely in the middle of the numerous events that the State Department does not dispute were exhausted as part of the complaint and investigation. The Krakow incident, in fact, occurred *after* the Frankfurt 2021 IMTS incident. It is therefore reasonable to assume that the issues pertaining to the Frankfurt 2021 IMTS position would have been part and parcel of any disability discrimination and retaliation investigation that was ongoing at the EEO anyway. And, certainly, the allegations are "reasonably related" to Mr. Lenzi's other allegations of ongoing denials of overseas assignments and placements. *Sydnor*, 681 F.3d at 594; *Stewart*, 912 F.3d at 705.

*Sydnor* is instructive. In *Sydnor*, a public health nurse filed an administrative charge with the EEOC alleging that Fairfax County denied her a reasonable accommodation. *Id.* at 592. The County argued that she did not exhaust her administrative remedies because the accommodation

21

Sydnor raised at summary judgment—working full duty with the assistance of a wheelchair—was allegedly so "fundamentally different" from the one mentioned in her EEOC questionnaire—light duty work—that she failed to satisfy the exhaustion requirement. *Id.* at 594.

The Fourth Circuit rejected this argument in *Syndor*, noting that "[t]he touchstone for exhaustion is whether plaintiff's administrative and judicial claims are 'reasonably related,' not precisely the same, and there are sufficient similarities between the two to find this requirement satisfied here." *Id.* at 595 (citing *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000)). Indeed, "dwelling on such technicalities . . . would only undermine the congressional preference for agency resolution in this area. A quest for absolute precision in the administrative charge would only 'encourage individuals to avoid filing errors by retaining counsel,' thereby 'increasing both the cost and likelihood of litigation.'" *Id.* at 597 (citing *Fed. Exp. Corp. v. Holowecki*, 552 U.S. 389, 406 (2008)). Therefore, so long as "a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation, she may advance such claims in her subsequent civil suit." *Id.* at 594 (citing *Smith*, 202 F.3d at 247); *see also Stewart v. Iancu*, 912 F.3d 693, 706 (4th Cir. 2019) ("[R]etaliation claims almost always relate back to previously filed EEO charges, and, therefore, may be raised for the first time in district court without the requirement that a plaintiff have exhausted his administrative remedies."). In *Syndor*, the facts underlying the exhausted failure to accommodate claim regarding the wheelchair accommodation were ***not*** in the EEO complaint. *Sydnor*, 681 F.3d at 595–96. They were nonetheless permitted as part of the failure to accommodate claim, however, because they were "reasonably related" to the failure to accommodate allegations in the EEO complaint. *Id.* So too here, even if Mr. Lenzi "abandoned" the 2021 Frankfurt IMTS position allegations (and they are assumed to have not been part of his

22

EEO complaint), these allegations should be permitted as "reasonably related" to the discrimination and retaliation allegations that span from 2019–2021 and permeate this lawsuit.

Likewise, *Smith v. First Union Nat'l Bank*, 202 F.3d 234 (4th Cir. 2000) and *Chisholm v. U.S. Postal Serv.*, 665 F.2d 482 (4th Cir.1981), which were analyzed in *Syndor*, both support Mr. Lenzi's argument. In *Smith*, the court found that an employee exhausted administrative remedies where her underlying claim—retaliation—did not change, even though the form of the alleged retaliation—threatened termination and refusal to offer any other positions—varied from the retaliation allegations that were stated in the original EEO complaint. *Smith*, 202 F.3d at 248. *Smith*, again, permitted the new allegations because they were "reasonably related" to her EEOC charge and would be expected to follow from an administrative investigation. *Id*. Specifically, both claims alleged retaliatory actions by the same employer—here too, the allegations at issue pertain to the same employer during the same timeframe. *Id.* Further, in *Chisholm*, the Fourth Circuit found exhaustion where both the administrative complaint and formal litigation concerned "discriminat[ion] in promotions" but involved different aspects of the "promotional system." 665 F.2d at 491. Based on this reasoning, the *Sydnor* court found that the County was afforded ample notice of the allegations against it. *Sydnor*, 681 F.3d at 595.

In this case, Mr. Lenzi provided even more detail in his EEO complaints than the plaintiffs in *Syndor*, *Smith*, and *Chisholm*. Mr. Lenzi's added assertion of the IMTS position is related to the same type of conduct (a pattern of disability discrimination and retaliation in assignment decisions), against the same employer, during the same time period. Further, Defendants had ample notice of Mr. Lenzi's allegations regarding the 2021 IMTS position because (1) Mr. Lenzi described these allegations in both his July 22, 2021 and July 28, 2021 EEO Complaints; (2) they were discussed in the parties' settlement negotiations in fall 2021—which Defendants do not

contest; and (3) Defendants have not only produced documents related to this position, but their own witnesses have referenced the position in deposition testimony.

Ultimately, as noted above, Defendants rely on what at most amounts to a clerical error, in which the EEOC appears to have mistakenly omitted Mr. Lenzi's allegations regarding the 2021 Frankfurt position as one of the several accepted allegations after it appeared in two of Mr. Lenzi's EEO complaints. As *Sydnor* confirms, the State Department's concerns are "overly technical," and would impermissibly "erect insurmountable barriers to litigation." *Sydnor*, 681 F.3d at 594.During the timeframe when the EEO issued a list of "accepted" allegations, the EEO was aware Mr. Lenzi was planning to move his claims to federal court, which Mr. Lenzi did shortly thereafter. Ex. F; Ex. D ¶ 6–7. Further, as noted above, there was never an affirmative intention to "abandon" or "waive" claims. The result that the State Department seeks would be particularly perverse on these facts, especially where the allegations are reasonably related to the "accepted" allegations in the EEO letter. This reinforces that the motion should be denied.

### III.    CONCLUSION

For these reasons, Mr. Lenzi exhausted his administrative remedies as to his disability discrimination and retaliation claims in the Second Amended Complaint, consistent with the Court's prior rulings, and respectfully requests that this Court permit the 2021 Frankfurt IMTS allegations as part of those claims and deny Defendants' Partial Motion to Dismiss.

Dated: December 9, 2022                         Respectfully submitted,

                                                 */s/ Christopher A. Suarez*
                                                Christopher A. Suarez (94400)
                                                Thomas M. Barba (*admitted pro hac vice*)
                                                Shannon G. Reid (*admitted pro hac vice*)
                                                Steptoe & Johnson LLP
                                                1330 Connecticut Avenue, NW
                                                Washington, DC 20036

Telephone: (202) 429-3000
Email: CSuarez@steptoe.com
      TBarba@steptoe.com
      Sreid@steptoe.com

Kate E. Fisch (*admitted pro hac vice*)
Steptoe & Johnson LLP
1114 Avenue of the Americas
New York, NY 10036
Telephone: (212) 506-3900
Email: KFisch@steptoe.com
*Counsel to Plaintiff Mark Lenzi*

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 9, 2022 a copy of the above document was served via ECF on all counsel of record.

*/s/ Christopher A. Suarez*
Christopher A. Suarez