```
                    UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF VIRGINIA


   MARK LENZI,                       :
                                     :
              Plaintiff,             :   Civil Action
                                     :   No. 1:21-cv-01371-PTG-IDD
        v.                           :
                                     :
   UNITED STATES DEPARTMENT OF       :   January 5, 2023
   STATE,                            :   10:23 a.m.
                                     :
                                     :
                                     :
              Defendant.             :
                                     :
   ............................. :
```

**TRANSCRIPT OF MOTION HEARING PROCEEDINGS**
**BEFORE THE HONORABLE PATRICIA TOLLIVER GILES,**
**UNITED STATES DISTRICT COURT JUDGE**

APPEARANCES:

For the Plaintiff:          STEPTOE & JOHNSON LLP (DC)
                            **Steven Kaplan, Esq.**
                            1330 Connecticut Avenue, NW
                            Washington, DC 20036
                            202-429-3000
                            Fax: 202-429-3015
                            Email: Skaplan@steptoe.com

                            STEPTOE & JOHNSON LLP (DC)
                            **Christopher Alan Suarez, Esq.**
                            1330 Connecticut Avenue, NW
                            Washington, DC 20036
                            202-429-8131
                            Email: Csuarez@steptoe.com

For the Defendant:          UNITED STATES ATTORNEY'S OFFICE
                            (Alexandria)
                            **Matthew J. Mezger, Trial Attorney**
                            **Catherine Yang, Trial Attorney**
                            2100 Jamieson Avenue
                            Alexandria, VA 22314
                            703-299-3700
                            Email: Matthew.mezger@usdoj.gov

APPEARANCES:   (Cont.)


Court Reporter:                     **Scott L. Wallace, RDR, RMR, CRR**
                                    Official Court Reporter
                                    United States District Court
                                    401 Courthouse Square
                                    Alexandria, VA  22314-5798
                                    Office: 703.549.4626
                                    Cell: 202.277.3739
                                    Email: Scottwallace.edva@gmail.com


Proceedings reported by machine shorthand, transcript produced
by computer-aided transcription.

1          **MORNING SESSION, JANUARY 5, 2023**

2     (10:23 a.m.)

3          THE COURTROOM CLERK:  Civil Action Number 1:21-cv-1371,

4     *Lenzi versus the Department of State, et al.*

5          Counsel, please note your appearances for the record.

6          MR. SUAREZ:  Good morning.  This is Christopher Suarez

7     from Steptoe & Johnson on behalf of Plaintiff Mark Lenzi.  With

8     me is Mr. Kaplan, also of Steptoe & Johnson.

9          THE COURT:  Thank you.  Good morning.

10         MR. METZGER:  Good morning, Your Honor.  Attorney Matthew

11    Metzger on behalf of defendants, and with me is --

12         THE COURT REPORTER:  I'm sorry, I didn't understand you.

13         MR. METZGER:  I apologize.  I'm joined by Ms. Catherine

14    Yang, trial attorney from the Department of Justice who is

15    arguing before the Court this morning.

16         THE COURT:  Good morning.  Ms. Yang, I'll hear from you

17    first.

18         MS. YANG:  Thank you, Your Honor.  Good morning.

19         THE COURT:  Good morning.

20         MS. YANG:  The issue before the Court on this motion is

21    whether plaintiff has fully and properly exhausted his claims

22    about an assignment, Frankfurt in 2021.  We think the plaintiff

23    very clearly has not.

24         As Your Honor knows, exhaustion requires more than just

25    initial claims concerning an administrative claim.  It requires

1    the plaintiff to see the claim through to conclusion, meaning the

2    employee has to continue to pursue the claim throughout the

3    entire history, and then, if they choose to bring a lawsuit, has

4    to timely bring claims in that federal case, too.

5         None of that happened here.  When the EEO office did not

6    accept the 2021 Frankfurt claim for investigation, the plaintiff

7    never responded to be accepted.  He responded on other claims,

8    but he did not pursue the Frankfurt claims, and as a result those

9    claims were never investigated --

10        THE COURT:  This is our third motion to dismiss in this

11   case.

12        MS. YANG:  Yes.

13        THE COURT:  And so we've already -- we have just issues of

14   exhaustion previously, not with respect to this Frankfurt 2021

15   claim but with respect to other claims, and so my first question

16   is:  How many of these allegations and amended allegation letters

17   do we have from the Department of State?  Are there three?

18        MS. YANG:  There were two following the EEO complaints.

19   They have over time been amended, and so there have been a couple

20   of different iterations of the acceptance letters.

21        I believe we have three acceptance letters that pertain to

22   the EEO claims in 2021, and I think there were two or maybe three

23   acceptance letters for the 2020 EEO claims.

24        THE COURT:  Okay.  So I don't have, the Court doesn't have

25   all of the acceptance letters before me because in your prior

1    motions to dismiss where you made arguments with regards to

2    exhaustion, the government relied on not only the letter, the

3    prior acceptance letters and attached some of those, but also the

4    plaintiff's original EEO complaint.

5         MS. YANG:  Yes.

6         THE COURT:  So you argued both.  So, you know -- because

7    when I looked at the letters that were attached to prior motions,

8    for instance, I didn't see the Frankfurt -- the 2019 Frankfurt

9    position referenced in those acceptance letters also, unless they

10   were in another letter that the Court was not provided.

11        MS. YANG:  I believe the Frankfurt assignment or the

12   Frankfurt claims from 2019 were included in our previous

13   acceptance letter.  I believe that letter is before the Court,

14   although I don't have -- I confess I don't have the previous

15   pleadings with me.

16        THE COURT:  Right, because I pulled the earlier pleadings,

17   I think, from your first motion to dismiss, and so maybe this

18   isn't the first letter, but it did not reference that prior

19   Frankfurt.  But still to that point, in challenging whether or

20   not plaintiff sufficiently and properly exhausted claims, the

21   government did also look to their EEO complaint.  And I get what

22   you are saying.  I appreciate what you're saying, because not

23   only do we have the issue of the letter from the Department of

24   State where there was not a correction, we also have had -- this

25   is potentially our third complaint:  The original, and then we

1    had a first amended, and then this is the second amended.  So I

2    get your point, but still, it seems like in prior motions the

3    government didn't provide those.

4         MS. YANG:  That's true, Your Honor, and the reason for

5    that is because there are two related but separate aspects of

6    exhaustion.  One aspect of exhaustion is the very traditional,

7    did the complainant bring the complaint at all in the

8    administrative charge?  And if the answer is no, that, you know,

9    the result from that is very straightforward.  And so that was

10   the exhaustion that we looked to and previously discussed,

11   failures to promote, failure to accommodate, because those things

12   have never been brought at all.  So that's one aspect of

13   exhaustion.

14        The aspect of exhaustion that we're dealing with today on

15   today's motion is not whether someone has brought the claim

16   initially, but whether they have seen that claim through to

17   completion in the administrative review.  That's different, but

18   it is an established body of law within the Fourth Circuit:  The

19   *Austin* case is the Fourth Circuit decision, and the --

20        THE COURT:  But it didn't involve merely correcting an

21   acceptance letter.

22        MS. YANG:  It's true that the Fourth Circuit case did not

23   involve those exact facts, although the teaching from the Fourth

24   Circuit authority is very clear that the claimant has to complete

25   the administrative proceeding through completion for whatever

1  claims they're trying to bring, but we did also cite other cases

2  from outside of this circuit that very specifically deal with the

3  facts of addressing -- of making sure that all the claims that

4  the claimant wants to bring in this case are presented in the EEO

5  letter.

6          THE COURT:  But as you said, those cases are not Fourth

7  Circuit cases.

8          MS. YANG:  That is true.

9          THE COURT:  And not all courts have gone that way,

10  correct?

11         MS. YANG:  I'm sure that is also true, but, again, I think

12  the teaching from the Fourth Circuit case is very clear.  It's

13  just a simple proposition that a claimant has to see the process

14  through to completion, and that can happen a number of different

15  ways.

16         THE COURT:  Now, the letter that the Department of State

17  issued was in September.

18         MS. YANG:  Yes.

19         THE COURT:  And at what point did claimant indicate that

20  they were pursuing a court -- pursuing filing a complaint in

21  Federal Court as opposed to proceeding with the administrative

22  process?  Does that --

23         MS. YANG:  I believe the notice of withdrawal that

24  plaintiff attached as one of his exhibits is dated early

25  September before the EEO's acceptance letter.

```
1          THE COURT:  So they indicated that they were withdrawing

2     and filing in Federal Court before the letter?

3          MS. YANG:  Correct.

4          THE COURT:  Okay.

5          MS. YANG:  But, of course, when we see the actual

6     complaint that was filed in Federal Court, there's no allegations

7     or claims included about Frankfurt in 2021 when plaintiff amended

8     his complaint last spring to add allegations about another

9     assignment.  He again chose not to pursue the Frankfurt claims,

10    and he made that choice a third time in the fall when he told the

11    Court that he had no further amendments to make.  We think that

12    under the law that we've cited in our papers and in which

13    plaintiff has not provided any contrary authority for, that this

14    is very clearly the epitome of failure to see a claim through to

15    completion, and that means that he has not fully and properly

16    exhausted his claims about Frankfurt in 2021.

17         I understand that plaintiff has made a number of arguments

18    in his opposition to try to get around this failure to exhaust,

19    and we addressed those fully in our reply brief.  I'll be happy

20    to talk about them further if --

21         THE COURT:  I want to go back to your position on the

22    failure to exhaust.  They issued the letter that they were going

23    to withdraw prior to the acceptance letter coming from the

24    Department.

25         MS. YANG:  I believe -- I believe that's correct.  I
```

1    believe that's correct.

2          THE COURT:  Ms. Yang, Mr. Suarez can find that answer.

3    You don't need to look for it.  And I agree with you that they

4    did have opportunities to raise it here sooner, but now they

5    haven't.  You did not -- the government did not seem to advance a

6    prejudice argument with regard to the second amended complaint in

7    your pleadings.  Is that fair?

8          MS. YANG:  It is true that we did negotiate a

9    {indiscernible} as to discovery, but we consented to the filing

10   of the complaint, although, of course, we didn't {indiscernible}

11   the exhaustion issue.

12         THE COURT:  I understand your position.

13         MS. YANG:  Thank you, Your Honor.  I'll be happy to

14   address any further questions Your Honor might have or in

15   response to the argument that counsel makes.

16         I think the bottom line is that we think the issue begins

17   and ends with the simple question of whether plaintiff saw these

18   claims through to completion, and I don't think there can be any

19   reasonable dispute that by failing to ensure that they were

20   included in the EEO proceedings, by failing repeatedly to bring

21   them in this case at various opportunities when they had the

22   chance to bring them in the case, that our motion should be

23   granted in this case.

24         MR. SUAREZ:  Good morning, Your Honor.

25         THE COURT:  Good morning.

1    MR. SUAREZ:  So just a few points.  First on the

2    exhaustion issue, as Your Honor pointed out, the only case they

3    cite from the Fourth Circuit is the *Austin* case.  It was not a

4    precedential decision and is not on point.  There is no Fourth

5    Circuit precedent that suggests that just because something is

6    not listed in the accepted allegations, that that somehow

7    vitiates exhaustion.  So there's no legal authority, precedential

8    legal authority that they have a leg to stand on in terms of

9    their argument.

10    And so, as a threshold matter, our position is that the

11    motion to dismiss should be denied on that basis alone because,

12    as Your Honor also alluded to, two of our client's EEO

13    complaints, July 22nd and July 28th, referenced this retaliation/

14    discrimination issue with respect to the Frankfurt IMTS position

15    in 2021 in detail.

16    And to Your Honor's prior rulings, Your Honor ruled that

17    certain claims were not exhausted because things in Your Honor's

18    view were not recited in those complaints, EEO complaints

19    sufficiently.  So here there's absolutely no dispute whatsoever

20    that this -- that these particular claims are exhausted.  They

21    have not presented any arguments to the contrary.

22    The second issue which is very important is, even if there

23    were binding legal authority and you were to assume that there

24    was some abandonment argument or that it was never even in the

25    complaint at all, we cited the case law from the Fourth

1    Circuit -- precedential case law from the Fourth Circuit --

2    including the *Sydnor* case, the *Smith* case, the *Chisholm* case,

3    which all stand for the proposition that like or related

4    allegations that grow from the same factual circumstances, same

5    corpus of facts, are actionable, even if they're not recited in

6    the complaint at all.  And here what we had was a position,

7    Frankfurt IMTS in 2021, which the timeframe is in May and June of

8    2021, and that was right before the *Krakow* decision, a denial in

9    July 2021.  In that timeframe between 2019 and 2021 where

10   Mr. Lenzi was on this Overcomplement status, the State Department

11   at every turn was denying his overseas positions and overseas

12   bids, which Your Honor had an initial hearing, was grounds for a

13   discrimination and retaliation claims.  And the proposition that

14   that case law stands for is that if an investigation would have

15   reasonably come up with this factual issue, that it can be

16   erased, and we submit that because this factual scenario of the

17   2021 IMTS position was close in time to the *Krakow* position and

18   then followed the same actors of the State Department, including

19   the Bureau of Diplomatic Security, because it's the Bureau that

20   continuously treated him in this manner and refused to give him

21   overseas assignments.

22       Just so Your Honor appreciates what happened in discovery,

23   this is a timeframe where they were directing him to a domestic

24   assignment.  They were saying you have to go into a domestic

25   position, and so this is when Mr. Lenzi was trying to get more --

1    you know, apply for other overseas positions and the continued

2    denials that continued.  And again smack dab in the middle,

3    *Sydnor* stands for the proposition when you have similar

4    timeframes, similar actors, similar claims.  Again, it's the same

5    counts:  Discrimination, retaliation.  It's the same thing.  A

6    lot of the cases they cite in their brief were these kinds of

7    cases where you have sex discrimination, and then you go to race,

8    you switch completely in those counts, and that's not what we're

9    doing here at all.  It's a factual issue that is within the same

10   discrimination or retaliation act advanced beyond the pleading

11   stage before.

12       And we note that -- in the *Smith* case, it's particularly

13   on point because in that case there were grounds of retaliation

14   that were not listed in the complaint that changed -- that

15   changed during the pleading stage, and the Fourth Circuit said

16   we're going to let those advance because they are related.  And

17   that's what we have here.  At the end of the day, Your Honor,

18   this is about fundamental fairness.  This was an issue that came

19   up during discovery that they produced documents about that --

20       THE COURT:  But you say that in your pleading that these

21   are new facts, but they're not new facts.  I mean, your client

22   filed an EEO complaint based on them.  So it's not new facts.

23   You didn't find out about that because of their discovery or

24   because of the deposition; you were already aware.  You just

25   didn't anticipate the legal theory that the government had.

1      MR. SUAREZ:  And candidly, Your Honor, we didn't

2  appreciate the significance.  In an ideal world -- and I just

3  want to clarify one point for the record as well.  Their

4  representation was correct that the allegations of the first

5  complaint were withdrawn prior to us coming to Federal Court, but

6  we could not have brought this Frankfurt IMTS position, we could

7  not have brought this with the original complaint.

8      So, in hindsight, I would have brought it in the first

9  amended complaint, and I acknowledge that, Your Honor.  But I

10  think Your Honor articulated very clearly that we did bring it,

11  and we brought it as soon as we appreciated the significance, and

12  opposing counsel consented to the amendment, and all the

13  prejudice factors were -- we discussed and handled during that

14  discussion.  We conceded to several discovery concessions on the

15  {indiscernible} relating to this issue to allay any prejudice

16  concerns.

17      And so our view is that if they really felt this was a

18  futile amendment, they could have opposed, you know, the

19  amendment itself with a futility basis.  But our view is, because

20  the law is so clear, that there is, you know, not a problem with

21  exhaustion on the threshold matter and because a reasonable

22  investigation would have come up with this.

23      In fact, I think the facts of the case bear that out.

24  It's because we did discovery, and we deposed witnesses, and we

25  asked that question, that, you know, these documents came to

1   light.  You're right that we in hindsight should have appreciated

2   that sooner, but if you think from the perspective of an EEO

3   investigator, they would have done the investigation, they would

4   have focused on more witnesses, they would have considered all of

5   that, and therefore it wouldn't have been the same investigation.

6       And one other point I want to make, Your Honor, that's

7   significant is that we cite all of these cases, again, Fourth

8   Circuit binding cases:  *Sydnor, Smith, Chisholm,* and explain them

9   in excruciating detail and also distinguish all of the cases.

10      And if you look at the government's brief where they

11  address this reasonably related issue like they're related,

12  there's a paragraph on page 5 of their brief, and in that

13  paragraph they cite no affirmative case law to support their

14  position, they don't rebut any of the Fourth Circuit authority

15  that we cited, including again *Stewart, Sydnor, Chisholm*, all of

16  those cases.  And so not only do they not present any affirmative

17  authority, they also do not rebut any of our Fourth Circuit

18  authority which dictates that, you know, the interest of justice

19  should permit this claim to proceed.

20      Again, in hindsight, we would have asserted it sooner, but

21  given the posture we're in here, there's no 12(b)(6) issue in

22  terms of the merits; there's no issue in terms of exhaustion; and

23  because this is smack dab in the center of all these issues that

24  occurred in 2019 and 2021, we believe that this should be

25  permitted to go to trial so we can tell the complete story, and

1    the government should not -- certainly should not be permitted

2    to, you know, as we noted in the Kaleczyc deposition, he tried to

3    suggest that, Oh, this is something that they offered that was

4    overseas.  But, again, they didn't follow through.  They found

5    another reason to deny him.  So we think this is an important

6    part of the trial story, in hindsight we should have mentioned it

7    sooner, but --

8         THE COURT:  But wouldn't you still have the opportunity to

9    counter the government's evidence with respect to that through

10   cross-examination and the questions you will ask?

11        MR. SUAREZ:  We certainly still do, but we do not think

12   that they have any legal leg to stand on in terms of this claim

13   or with this aspect of the claim going forward, because it is,

14   again, part of the corpus of factual allegations linked to this

15   ongoing effort by the State Department to keep Mr. Lenzi in

16   Overcomplement status, keep him in domestic positions, refuse to

17   give him the opportunity to advance his career, as we have

18   alleged and as Your Honor agreed was permitted to proceed.

19        So, unless Your Honor has further questions, for those

20   reasons we believe the motion should be denied.

21        THE COURT:  Okay.  Ms. Yang.

22        MS. YANG:  Thank you, Your Honor.  I do have a couple of

23   brief points in response.  The first is that counsel criticizes

24   the *Austin* decision that we were relying on which is the one that

25   the plaintiff has to see the process through to completion.

1   That's been unpublished.  Certainly it's true it's been

2   unpublished, but I think it's still Fourth Circuit authority and

3   the Fourth Circuit has followed it.  Among those cases which we

4   cite in our papers is the *Clark* case from the Eighteenth

5   District, and the facts of that case, although not identical, are

6   quite similar with the case in which the plaintiff took an

7   administrative appeal of certain of the claims that he had

8   brought initially, but did not go through on certain other

9   claims, and the district court held that the claims that he had

10  not continued to pursue were not exhausted and therefore were

11  dismissed from the case.

12      Counsel just now referred repeatedly to how the 2021

13  Frankfurt assignment is part of the corpus of their story, and we

14  think that fundamentally misunderstands the exhaustion

15  requirement for disparate treatment claims, which is a theory of

16  a claim that plaintiff has pled in the case, disparate treatment

17  claims require disparate acts and disparate acts that have been

18  independently exhausted.  A plaintiff can't just come in and say

19  there's this umbrella of discrimination and retaliation, and

20  anything that I say is discriminatory or retaliatory, and that's

21  just not how it works for these kinds of claims.

22      Counsel also made an earlier argument that the 2021

23  Frankfurt assignment allegations are like or relate to the things

24  that were exhausted and therefore they should come in that way.

25  Again, as we demonstrated in our reply brief, the later argument

1    that came in that they cited, the *Sydnor* case, the *Smith* case,

2    the *Chisholm* case that counsel just referenced, that's a

3    different standard that deals with a different issue.  It deals

4    with the first issue that I described to Your Honor in my

5    opening, which is has the piece -- has the plaintiff brought the

6    claims at all, did they make it part of the administrative claim

7    at all?

8         Again, we're not dealing with that issue here, we're

9    dealing with a separate issue of did the claimant see the claims

10   that they brought through to completion in the administrative

11   proceedings.  And again, there's a completely different --

12        THE COURT:  And your basis for saying they didn't see it

13   through is their failure to correct the letter?

14        MS. YANG:  The failure to -- well, the actions that they

15   took to demonstrate that they did not intend to pursue the claim

16   through the administrative proceedings, which include not just

17   failing to make sure that it's included in the letter, but making

18   corrections to other -- demonstrating the intent to correct and

19   make sure that those claims were properly framed for the

20   administrative proceedings, but then not doing so with respect to

21   the claims that are at issue here.  I'm -- plaintiff's counsel

22   says that we don't cite any affirmative --

23        THE COURT:  Here's my issue with that.  I understand and

24   appreciate that the plaintiff failed to correct, but it is

25   clearly stated in the -- I mean, that was the whole focus of the

1    July 22nd complaint, and so the failure for -- and plaintiff did

2    not correct it.  I hear you on that, but the agency failed to

3    include it.  I mean, that was the whole complaint on July 22nd,

4    you know, the 12-pages with e-mails included and all of that, and

5    it just wasn't referenced.  I think they just spoke -- I think it

6    was a mistake that they didn't focus also on the -- it seemed

7    like they only focused on the July 28th complaint, even though

8    they included the date for the July 22nd complaint, but there was

9    also a failure on the agency's part.  I acknowledge and

10   appreciate your arguments in terms of plaintiff's failure to

11   correct it, but I have an issue with that, because to me there's

12   no reasonable justification for it not to have been included when

13   that was the whole basis of the July 22nd letter.

14       MS. YANG:  I appreciate Your Honor's concern, and I don't

15   know why it wasn't included.  I don't know if it was because

16   there was a determination that those things weren't timely.

17   There could be any number of reasons why that was not included in

18   the record, including what's not part of the record as to why

19   they weren't, but certainly the undisputed --

20       THE COURT:  And I understand your position, and you're

21   not -- you can't really defend that, and I'm not asking you to,

22   but I'm letting you know what my concern is.

23       MS. YANG:  Right.

24       THE COURT:  And I see and I appreciate the cases that you

25   have cited, but none of them are binding on me, and that is where

1   my concern is, the fact that it was clearly identified in that

2   letter.

3       MS. YANG:  I understand, Your Honor.  Again, I do think

4   that the District Court decision from EDVA that we cited in our

5   papers does go to the issue, again not necessarily the second

6   claim issue, but certainly the issue that --

7       THE COURT:  And I've looked at the cases, and I definitely

8   have considered that, as well as the *Alston* case and, you know,

9   your authority, the Judge Cacheris case, but still that is my

10  issue, and those cases don't have these facts.

11      MS. YANG:  I understand Your Honor's concern.

12      THE COURT:  And I read your cases from, you know, other

13  courts where they have looked at acceptance letters and found

14  that the plaintiff's failure to correct those letters constituted

15  a failure to exhaust.  I'm just saying I don't agree with that.

16      MS. YANG:  I understand, Your Honor.  The final point I

17  would just end on, though, is that, you know, the -- what really

18  does distinguish this case from any other case I've seen dealing

19  with exhaustion issues is that the abandonment in this case

20  really is far more pronounced than the {indiscernible} --

21      THE COURT REPORTER:  I'm sorry, counsel, I can't hear you.

22      MS. YANG:  Is more pronounced because of the multiple

23  opportunities to bring the Frankfurt claims in this case.

24  Plaintiff's counsel says it was an oversight, we didn't mean to

25  not include them, but, respectfully, Your Honor, that's not --

1       that's not an excuse for exhaustion.  The exhaustion requirements

2       are there for a reason.  They had the opportunity to do so.  They

3       had three opportunities to do so well after they became aware of

4       the facts and the allegations, and the timeliness requirements to

5       correct them in this case.  So, for these reasons and those we

6       argued, we ask that the motion be granted.

7              THE COURT:  Thank you.

8              MS. YANG:  Thank you.

9              THE COURT:  The first issue I'm going to take up is the

10      plaintiff's repleading portions of the case that I've already

11      dismissed.  Stop doing that.  Your exceptions have been

12      preserved, so don't keep including them in the complaint.  Even

13      if you can, don't.

14             The government's motion is granted with respect to that

15      request.  Those claims have already been dismissed with

16      prejudice.  Okay.  Next, in terms of the 2021 Frankfurt IMTS,

17      those allegations which have now been included in the complaint,

18      this is the first time the Court is seeing those allegations.

19      And I understand your argument with respect to, you know, the

20      discrimination and retaliation claims that have been exhausted,

21      and those are properly before the Court, and it includes these

22      allegations with respect to the 2021 Frankfurt position, but

23      allegations with respect to the position have not been included

24      and before the Court before, and the government's arguments with

25      regard to, you know, like -- I understand your argument with

1   respect to witness in time for your first complaint, but, you

2   know, it should have been in your first amended complaint are.

3   And these aren't new facts, but for me that is really more

4   related to a prejudice argument and not for an exhaustion with

5   respect to plaintiff's failure to correct the acceptance letter.

6   I understand the government's argument and the cases that you

7   have cited with respect to exhaustion, but, as I said before,

8   none of those are binding on the Court, and the acceptance letter

9   is not a statutorily required procedure, and in this case

10  plaintiff's EEO -- that July 22nd complaint, the whole focus of

11  it was the 2021 Frankfurt or those allegations.

12          And I think that, you know, there is some blame with the

13  agency and the reasonable -- the reason that those should have

14  been -- that that should have been excluded in the acceptance

15  letter, and plaintiff was advised in the letter to correct it and

16  did correct a portion dealing with *Krakow*.  I don't know why the

17  plaintiff didn't correct or add in the Frankfurt claim for that

18  point, but I also don't know why the agency didn't include it

19  either, and I'm not going to find that plaintiff failed to bring

20  the claim -- or failed to exhaust the claim when they adequately

21  advised the agency of the claim.  This may be a different

22  position if the administrative process had proceeded more or

23  plaintiff had done more affirmative steps to abandon the claim at

24  the agency level, but that's not before me.  Those aren't the

25  facts in this case.  And you've also correctly noted that they

1    didn't raise it at the first opportunity with that first amended

2    complaint, but you agreed that they could -- or you agreed that

3    the amendment provided that you could raise this argument or

4    motion to dismiss on the exhaustion ground, but I'm not

5    particularly persuaded by the exhaustion argument at the agency

6    level.  They didn't raise it initially in court before, but they

7    have raised it now, and I'm going to permit that.  I'm not going

8    to grant your motion to dismiss.  I'm going to deny it for the

9    reasons that I stated, because I don't believe that that process

10   of correcting or the letter is statutorily required.

11        The plaintiff fully put the agency on notice about those

12   allegations, and to me there's no reason why it was not included

13   in that acceptance letter, and also given, the timing of it, that

14   that was also around the time that they were making the decision

15   to proceed to Federal Court, and so for those reasons I'm denying

16   your motion.

17        Now, have you all worked out what discovery will be with

18   respect to these claims or these allegations?

19        MS. YANG:  Yes, Your Honor.  Fact discovery is closed at

20   this point.

21        THE COURT:  But have you all worked out whatever was

22   needed?

23        MR. SUAREZ:  Yes, we have.

24        THE COURT:  Thank you.

25        MS. YANG:  Thank you.

1    THE COURT:  Your exceptions are preserved.  We're

2  adjourned.

3    (Proceedings adjourned at 10:59 a.m.)

4    **C E R T I F I C A T E**

5

6    I, Scott L. Wallace, RDR-CRR, certify that
   the foregoing is a correct transcript from the record of

7  proceedings in the above-entitled matter.

8

    /s/ Scott L. Wallace                    1/10/22
9  ---------------------------        ----------------
    **Scott L. Wallace, RDR, CRR**              **Date**
10    **Official Court Reporter**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25